UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CALVIN W. HOLLIS, )
)
         **Plaintiff,** )
)
v. ) Case No. 13-CV-0590-CVE-FHM
)
SHERIFF JOHN DAVIS, in his official )
capacity, and STEVE TOLIVER, )
)
         **Defendants.** )

## OPINION AND ORDER

Before the Court is plaintiff's motion for partial summary judgment (Dkt. # 33). Plaintiff seeks summary judgment in his favor pursuant to Federal Rule of Civil Procedure 56 as to three affirmative defenses of defendants:[1] failure to comply with the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997 et seq.; receipt of medical care from a third party; and the statute of limitations. Dkt. # 33, at 1.[2] Defendants respond that each defense is warranted and, thus, that

---

[1]     In a previous order, the Court noted that plaintiff's motion for partial summary judgment appeared to address only the affirmative defenses of defendant Toliver, not both defendants. See Dkt. # 40, at 1 n.1. The motion response is solely in Toliver's name, and it cites the Court's order as the reason for its submission without the participation of defendant Davis. Dkt. # 43, at 7 n.1. Plaintiff states in his reply that the scope of the motion for partial summary judgment was intended to encompass both defendants, not just Toliver. Dkt. # 44, at 1. As the relevant affirmative defenses are identical, the Court will assume that plaintiff's references to Toliver should be interpreted as applying to both defendants. Similarly, although captioned for Toliver only, the response repeatedly refers to both defendants, and it includes arguments applicable solely to Davis. See Dkt. # 43, at 23 (discussing municipal liability). Thus, the Court will ascribe Toliver's response to both defendants.

[2]     Plaintiff also requests sanctions, arguing that the mere act of raising these particular defenses "show[s] compellingly that [defendants made] no reasonable inquiry" into the facts of the case. Dkt. # 33, at 22. The Federal Rules of Civil Procedure require that motions for sanctions "be made separately from other motion[s]" and that such motions be presented to the opposing party twenty-one days before they are filed with the Court. FED. R. CIV. P. 11(c)(2). As plaintiff has not followed these requirements, the Court will not consider sanctions against defendants.

summary judgment is inappropriate. Dkt. # 43.[3] Plaintiff has filed a reply. Dkt. # 44. The Court issued an order to show cause (Dkt. # 46) as to plaintiff's prisoner status on the date he filed the complaint, and plaintiff filed a response to that order (Dkt. # 47).[4]

**I.**

Plaintiff began his incarceration in the Creek County Criminal Justice Center (CCCJC) on April 29, 2011. Dkt. # 33-1. According to the testimony of Captain Kelly Birch, the CCCJC's administrator, plaintiff would have been issued clothing and bedding at that time, and he would have received new clothing twice a week thereafter. Dkt. # 33-10, at 2. The Oklahoma State Department of Health regularly inspected the CCCJC prior to and during plaintiff's incarceration. Dkt. ## 33-7, 33-8. The CCCJC was inspected on February 24, 2011, and the inspector reported a number of sanitation issues in the kitchen. Dkt. # 33-8, at 1. On May 6, 2011, the CCCJC responded by letter to the February inspection. Id. at 2. Similar inspections were performed on November 16, 2011, and July 11, 2012. Dkt. # 33-7 at 1; Dkt. # 33-8, at 4. Captain Birch noted that the chief of security, Gina Hutchinson, was responsible for carrying out the duties of sanitation officer at the CCCJC, including making a weekly sanitation inspection. Dkt. # 33-10, at 2.

On July 7, 2011, Creek County--on behalf of the Sheriff's Office-- contracted with Advanced Correctional Healthcare, Inc. (ACH) to secure medical services for CCCJC inmates. Dkt. # 33-5,

---

[3] Defendants also seek sanctions, arguing that plaintiff's filing a motion for partial summary judgment instead of a motion to strike defenses was unwarranted by law and served only to waste time and resources. Dkt. # 43, at 27-30. Like plaintiff, however, defendants have not demonstrated compliance with the requirements for a motion for sanctions. See FED. R. CIV. P. 11(c)(2). Thus, the Court will not consider sanctions against plaintiff.

[4] Plaintiff's response (Dkt. # 47) includes substantial briefing and evidentiary materials beyond that necessary to satisfy the Court's order. The Court will not consider this additional material in ruling on plaintiff's motion. See FED. R. CIV. P. 56(c)(1).

at 1. ACH would provide all staff, including physicians, nurses, and mental health workers, and would be responsible for all medical care. Id. at 2-4. In turn, the CCCJC would be responsible for all of the prisoners' non-medical care. Id. at 7. Included in the contract were two hold harmless clauses: one indemnified ACH for the county's negligence; and the other indemnified the county for ACH's negligence. Id. at 10. This contract was in force for the remainder of plaintiff's incarceration at the CCCJC. Id. at 8.

Plaintiff first sought medical care on August 12, 2011, when he filled out a sick call request form stating that he suffered from serious back pain. Dkt. # 33-6. On September 25, 2011, plaintiff asked to receive medical care for redness on his right arm, and a guard escorted him to the CCCJC medical facility. Dkt. # 33-4. Plaintiff was seen again on October 1, 2011, when a nurse diagnosed him with a possible yeast infection in his right arm and prescribed medication. Dkt. # 33-15. Plaintiff returned to the CCCJC medical facility on October 2 and October 3 with escalating symptoms, including pain, swelling, and fever. Dkt. ## 33-16, 33-17. Following his visit on October 3, plaintiff was sent to a local hospital for treatment. Dkt. # 33-19, at 1. At the hospital, plaintiff underwent surgery on his arm. Dkt. # 33-23. In the days and weeks immediately following his release from the hospital, plaintiff repeatedly did not appear at the CCCJC medical facility to receive his prescribed medication. See Dkt. # 33-18, at 1-4; Dkt. # 33-24, at 1-5.

Plaintiff filed a request to staff on January 24, 2012, seeking medical attention for his vision, blood pressure, and blood sugar levels. Dkt. # 33-21. He received a response the next day, stating that he was already on the waiting list to receive an eye exam and that his visit to the medical facility the previous day had shown a minor problem with his blood pressure and no problem with his blood sugar levels. Id. On January 25, 2012, plaintiff filed a grievance report directed to Hutchinson,

3

requesting better medical care because his blood pressure was high and because he needed to see an optometrist. Dkt. # 33-25. Plaintiff received no response to his grievance. Dkt. # 33-26. Plaintiff was taken to see a local optometrist on February 23, 2012. Dkt. # 43-4, at 2. Plaintiff filed a second request to staff on April 16, 2012, also directed to Hutchinson, asking about the first grievance. Dkt. # 33-26. Hutchinson answered two days later, stating that she had never received the grievance but reminding plaintiff that he had been taken to an optometrist. Id. On April 27, 2012, plaintiff was transferred to an Oklahoma Department of Corrections (ODC) facility to serve the remainder of his sentence. Dkt. # 43-1.

Plaintiff filed his complaint on September 5, 2013. Dkt. # 1. At that time, plaintiff remained incarcerated in an ODC facility. Dkt. # 47, at 1. He subsequently filed an amended complaint (Dkt. # 13) and a second amended complaint (Dkt. # 16), with each amendment intended primarily to identify the proper defendants to plaintiff's claims. In his second amended complaint, plaintiff asserts several claims under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights, specifically pointing to defendants' failure to provide sanitary conditions, clean bedding and clothing, and adequate medical treatment. Dkt. # 16, at 2-5.

## II.

Summary judgment pursuant to Rule 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Plaintiff seeks summary judgment as to the applicability of three of the affirmative defenses asserted by defendants to his claims under 42 U.S.C. § 1983. The defenses are: failure to comply with the exhaustion requirements of the PLRA; provision of medical care by ACH, an independent medical care provider; and the statute of limitations. Dkt. # 33, at 1; see also Dkt. # 20, at 4. Defendants respond that these defenses are merited and, in any event, that plaintiff has failed to meet his burden under Rule 56.

5

A. Compliance with the PLRA

Plaintiff first seeks summary judgment as to the defense that plaintiff "did not comply with the PLRA as to each claim he is alleging in this case." Dkt. # 33, at 6. The PLRA provides, inter alia, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff argues that he exhausted the administrative remedies available to him--the request to staff and the grievance report--and that defendants rendered further action unavailable. Dkt. # 33, at 12-15. Defendants respond that plaintiff failed to exhaust the available administrative remedies because he did not complete the administrative process. Dkt. # 43, at 21.

In briefs, neither party addressed the threshold issue of whether the PLRA applies to plaintiff's case, instead focusing solely on the issue of exhaustion. However, the PLRA applies--and exhaustion is necessary--only when the plaintiff is "a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). The Tenth Circuit has concluded, based on the plain language of the statute, that "a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit." Norton v. City of Marietta, Okla., 432 F.3d 1145, 1150 (10th Cir. 2005). The statute makes a litigant's status as a prisoner necessary to application of the PLRA because "'[p]risoners often have an abundance of time, while facing a restricted number of enjoyable activities' . . . . Once a prisoner is released, however, '[o]pportunity costs of litigation rise . . . , diminishing the need for special precautions against weak suits.'" Id. (quoting Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998)). In his motion, plaintiff stated that the complaint was filed after he

6

was released from prison. Dkt. # 33, at 21. In response to the Court's order to show cause, however, plaintiff confirmed that he was a prisoner when he filed his complaint. Dkt. # 47, at 1. Thus, plaintiff must comply with the PLRA's exhaustion requirement.

Before a prisoner may bring suit under § 1983 alleging a constitutional violation with respect to prison life, he or she must satisfy the PLRA's exhaustion requirement. Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); see also Jones v. Bock, 549 U.S. 199, 203 (2007 ("What this country needs, Congress decided, is fewer and better prisoner suits."). The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. See Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001)). "[E]ven if a plaintiff is unaware of a prison's administrative grievance procedure, such unawareness does not waive the exhaustion requirement under the PLRA." Torres v. Corr. Corp. of Am., 372 F. Supp. 2d 1258, 1262 (N.D. Okla. 2005) (citing Gonzales-Liranza v. Naranjo, 76 F. App'x 270, 273 (10th Cir. 2003) (unpublished opinion)). There is no futility exception to § 1997e(a)'s exhaustion requirement. Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). However, a prisoner need only exhaust "available" administrative remedies: "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative

remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010).

A necessary predicate to establishing that a prisoner has met the PLRA's exhaustion requirement is providing information about the administrative procedures that the prison in question requires inmates to follow. Both the Supreme Court and the Tenth Circuit repeatedly and routinely detail the administrative process before discussing whether a prisoner has exhausted the available remedies. See, e.g., Jones, 549 U.S. 199, 206-207 (2007) (discussing the Michigan Department of Corrections policy); Woodford v. Ngo, 548 U.S. 81, 85 (2006) (describing the California Department of Corrections procedures); Little, 607 F.3d at 1249 (outlining the ODC's four-step administrative process); Lee v. Benuelos, __ F. App'x __, 2014 WL 6788193, at *1 (10th Cir. Dec. 2, 2014)[5] (describing the four-step process employed by the Federal Bureau of Prisons). However, plaintiff presents no evidence of the CCCJC's policies, preventing the Court from determining if he exhausted all available administrative remedies prior to filing suit. The evidence shows that plaintiff had access to two types of communication with the CCCJC: the request to staff and the formal grievance. See Dkt. ## 33-21, 33-25. In his motion, plaintiff assumes--and asks the Court to assume--that the CCCJC followed a two-step administrative process, where a prisoner would first file a request to staff and, if not satisfied, would then file a grievance. See Dkt. # 33, at 12-13. Yet in his reply, plaintiff references without evidence a possible hearing on a grievance. Dkt. # 44, at 3.[6]

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

[6] Plaintiff cites Hutchinson's deposition testimony as the source for this information. Dkt. # 44, at 3 (citing "Hutchinson depo. at p. 130, line 6"). However, plaintiff failed to provide the cited evidence.

Defendants argue that plaintiff failed to comply with the applicable CCCJC procedures and state, without further explanation, that plaintiff did not "see the administrative process through to its conclusion." See Dkt. # 43, at 21. The Court declines to make an assumption about the CCCJC's administrative process. Without evidence about the administrative process, the Court cannot determine if plaintiff exhausted the available administrative remedies before filing suit. Thus, plaintiff has not shown that "there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Plaintiff's motion for partial summary judgment is therefore denied as to defendants' PLRA defense.

B. Provision of Medical Care

Plaintiff next seeks summary judgment as to the following defense: "Medical care to [p]laintiff . . . was provided by an outside medical care provider, pursuant to a contract for the provision of medical care to inmates." Dkt. # 20, at 4. Plaintiff argues that defendants' constitutional duty to provide medical care is non-delegable, and thus any contractual hold harmless clause has no effect on defendants' liability under § 1983. Dkt. # 33, at 16. Defendants respond that the defense is asserted not to invoke a hold harmless clause but instead to show that defendants were not deliberately indifferent to plaintiff's serious medical needs. Dkt. # 43, at 23.

"Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody." Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104-106 (1976)). "Eighth Amendment claims alleging inadequate or delayed medical care thus involve both an objective and a subjective component, such that [courts] must determine both 'whether the deprivation is sufficiently serious' and 'whether the [government] official acted with a sufficiently culpable state of mind.'" Oxendine

9

v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001) (citations omitted). A medical need is "sufficiently serious" when it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Hunt v. Uphoff,199 F.3d 1220, 1224 (10th Cir. 1999)). Deliberate indifference requires that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Defendants make no argument as to the first prong of the analysis, so the Court will assume, for purposes of this motion only, that any medical need was sufficiently serious to satisfy the first prong.

Defendants argue that their trust in ACH's provision of medical care to plaintiff demonstrates that they were not deliberately indifferent to plaintiff's serious medical needs. Defendants rely heavily on the Third Circuit's decision in Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). In Spruill, the plaintiff sued both medical and non-medical prison officials for violations of his Eighth Amendment right to adequate medical care. Id. at 222. The Third Circuit discussed the medical and non-medical officials separately, writing that "[i]nmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor." Id. at 236. The Third Circuit concluded that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. In an unpublished case, the Tenth Circuit cited Spruill favorably as one of several decisions showing that "unreasonable reliance on

the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious medical needs." Weatherford ex rel. Thompson v. Taylor, 347 F. App'x 400, 404 (10th Cir. 2009). Several district courts in this circuit, including this Court, have cited Spruill and Weatherford for the proposition that a non-medical prison official's reasonable reliance on the advice of a medical professional can preclude a finding of deliberate indifference. See Cox v. Koch, No. 11-CV-0771-CVE-TLW, 2013 WL 6002225, at *18-19 (N.D. Okla. Nov. 12, 2013); Key v. McLaughlin, Civ. Action No. 10-cv-00103-WJM-CBS, 2013 WL 1507950, at *5 (D. Colo. Mar. 19, 2013); Stafford v. McCurtain Cnty. Jail Trust, No. CIV-10-30-FHS, 2011 WL 2260489, at *6 (E.D. Okla. June 7, 2011), rev'd on other grounds sub nom. Stafford v. Stewart, 461 F. App'x 767 (10th Cir. 2012). Although neither Spruill nor Weatherford is precedential, the Court finds them persuasive.

The Supreme Court has made clear that the provision of medical care by an independent contractor does not prevent finding a jail official liable under § 1983 for violating a prisoner's Eighth Amendment rights. West v. Atkins, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."). Regardless of whether the medical care was provided by an independent medical provider or a physician employed directly by the prison, to succeed on his § 1983 claim plaintiff must demonstrate both a serious medical need and deliberate indifference. See id. at 55. Following Spruill and Weatherford, the reasonable reliance of jail officials on the medical advice of their contract partners would not necessarily be deliberate indifference. See Weatherford, 347 F. App'x at 404. Thus, summary judgment on defendant's provision of medical care defense can

be granted in plaintiff's favor only if plaintiff shows that no reasonable juror could find that defendants could reasonably rely on the advice of ACH's medical staff as to plaintiff's care.

Construed in the light most favorable to the non-moving party, see Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), the evidence is insufficient to grant summary judgment in plaintiff's favor. Plaintiff first complained of pain in his arm on September 25, 2011, and he was taken to the medical facility that day. Dkt. # 33-4. He was seen again on October 1, when the medical staff prescribed medication and made a preliminary diagnosis. Dkt. # 33-15. On subsequent days, plaintiff continued to receive care, and the evidence shows that the ACH staff were monitoring his symptoms. See Dkt. ## 33-16, 33-17. When plaintiff's symptoms progressed beyond what the ACH staff could treat, they sent him to the hospital. Dkt. # 33-17. On plaintiff's return to the CCCJC, medications were made available to him, although he did not always appear to receive them. Dkt. # 33-18, at 1-4; Dkt. # 33-24, at 1-5. Plaintiff filed two requests for staff seeking medical attention for his vision and blood pressure, and each received a prompt response. Dkt. ## 33-21, 33-25. Plaintiff's sole grievance received no official answer, but the underlying complaint was resolved within one month. Dkt. # 43-4, at 2. Based on this evidence, a reasonable juror could find that defendants lacked a reasonable belief or actual knowledge that the ACH staff were not providing plaintiff with adequate medical care. See Spruill, 372 F.3d at 236. A reasonable juror could therefore find that defendants could reasonably rely on the advice of the ACH staff and, thus, that defendants were not deliberately indifferent to a serious medical need. Accordingly, plaintiff's motion for summary judgment is denied as to defendants' provision of medical care defense.

C. Application of the Statute of Limitations

Finally, plaintiff seeks summary judgment as to whether defendants may assert the statute of limitations as a defense. Defendants respond that a statute of limitations defense is merited because plaintiff has not provided dates for several of the constitutional violations alleged in the second amended complaint. Dkt. # 43, at 25. For § 1983 claims, federal courts "apply the applicable state statute of limitations." Price v. Philpot, 420 F.3d 1158, 1162 (10th Cir. 2005) (citing Abbitt v. Franklin, 731 F.2d 661, 663 (10th Cir. 1984)). In Oklahoma, a claim for "injury to the rights of another, not arising on contract" must be brought within two years of the date the claim for relief accrued. OKLA. STAT. tit. 12, § 95(A)(3); see also Abbitt, 731 F.2d at 663. "Federal law controls questions relating to accrual of federal causes of action. A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Baker v. Bd. of Regents of State of Kan., 991 F.2d 628, 632 (10th Cir. 1993) (internal citations omitted). Plaintiff filed his complaint on September 5, 2013,[7] so any claim for relief that accrued before September 5, 2011 is barred by the statute of limitations.

Construing the evidence in defendants' favor, see Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), plaintiff has failed to show that summary judgment should be granted as defendants' statute of limitations defense. Plaintiff argues that defendants' statute of limitations

---

[7] Plaintiff has filed an amended complaint (Dkt. # 13), and a second amended complaint (Dkt. # 16). Rule 15 sets out the requirements for an amended pleading to relate back to the date of the original pleading. See FED. R. CIV. P. 15(c)(1)(C). Defendants do not argue that the statute of limitations should be determined based on either amended pleading, effectively conceding that each amended complaint relates back to the original complaint. See Dkt. # 43, at 25. Thus, the Court need not determine if each amended complaint meets the requirements for relation back under Rule 15. For this motion only, the Court will consider September 5, 2013, to be the applicable filing date for purposes of the statute of limitations.

13

defense is without merit because his claim for constitutionally inadequate medical care accrued when he asked to receive medical care for his arm on September 25, 2011. Dkt. # 44. Even assuming this contention is true, plaintiff's second amended complaint includes several claims for relief under § 1983 other than the adequacy of medical care, including failure to provide clean bedding or clothing and failure to maintain sanitary conditions. Dkt. # 16, at 1-5. Although precise dates are for the most part absent from the second amended complaint, the evidence shows that a statute of limitations defense may apply to the latter two claims. Captain Birch testified that prisoners received clean clothing twice a week. Dkt. # 33-10, at 2. Presumably, this included the weeks between April 29, 2011, when plaintiff entered the CCCJC, and September 5, 2011. Thus, to the extent that plaintiff maintains his claim that defendants failed to provide him with clean clothing, all or a portion of that claim may have accrued prior to September 5, 2011. Similarly, on May 6, 2011, the CCCJC responded to an inspection report that highlighted sanitation issues in the kitchen. Dkt. # 33-8, at 2. Thus, the CCCJC's sanitation may have been constitutionally inadequate soon after plaintiff arrived, and all or a portion of plaintiff's claim for failure to maintain sanitary conditions therefore may also have accrued prior to September 5, 2011. Because the statute of limitations could apply to some of plaintiff's claims or portions thereof, plaintiff has not shown that "there is no genuine dispute of material fact" and that he "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Plaintiff's motion for partial summary judgment is denied as to defendants' statute of limitations defense.

**IT IS THEREFORE ORDERED** that plaintiff's motion for partial summary judgment (Dkt. # 33) is hereby **denied**.

**DATED** this 16th day of December, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE