# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| CALVIN W. HOLLIS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 13-CV-0590-CVE-FHM |
| SHERIFF JOHN DAVIS, in his official capacity, and STEVE TOLIVER, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are the motions for summary judgment of defendants Steve Toliver (Dkt. # 53) and Sheriff John Davis[1] (Dkt. # 54). Each defendant moves for summary judgment, pursuant to Fed. R. Civ. P. 56, as to all of plaintiff's claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. Both argue that summary judgment is appropriate because plaintiff's claims are barred by the exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997 et seq. (PLRA), and because plaintiff cannot show a constitutional violation.[2] Dkt. # 53, at 11, 25; Dkt.

---

[1] Davis is sued in his official capacity as sheriff of Creek County, Oklahoma. See Dkt. # 16, at 1. Under Oklahoma law, the sheriff is the proper party to be named for any claim of municipal liability alleged against a county sheriff's department. See Dkt. # 12.

[2] While both defendants argue that plaintiff cannot show a constitutional violation, they do so in different contexts. Toliver contends that he is entitled to qualified immunity from suit because plaintiff cannot show a constitutional violation. Dkt. # 53, at 25; see also Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (noting that the qualified immunity analysis requires a court to "decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right"). Davis, on the other hand, asserts that plaintiff failed to demonstrate a constitutional violation in the context of a § 1983 suit against a municipality. Dkt. # 54, at 18; see also Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." (citations omitted)). Despite these different contexts, however, the defendants articulate the same argument.

# 54, at 12, 21. Additionally, Toliver contends that the applicable statute of limitations also bars some of plaintiff's claims. Dkt. # 53, at 26. Plaintiff responds that he has met the PLRA's exhaustion requirement, that the statute of limitations is not at issue, and that a question of fact remains as to whether plaintiff's Eighth Amendment rights were violated.[3] Dkt. ## 58, 65. Both Toliver and Davis have filed replies. Dkt. ## 69, 70.

## I.

Plaintiff, having been convicted of larceny of domestic animals, was incarcerated in the Creek County Criminal Justice Center (CCCJC) on April 29, 2011.[4] Dkt. # 53-2; Dkt. # 53-28, at 1. Although plaintiff was held in the CCCJC, he was officially a prisoner of the Oklahoma Department of Corrections (DOC). Dkt. # 53-28, at 2. Upon his entry to the CCCJC, plaintiff was presented with clothing, hygiene items, and bedding. Dkt. # 53-3. Plaintiff signed that he received each of the items listed on his inmate assigned property form, id., but he testified in his deposition that he did not in fact receive all of those items. Dkt. # 53-1, at 18.

Soon after arriving, plaintiff began to experience problems with CCCJC officials and practices. Plaintiff requested permission several times to access the CCCJC's law library while his criminal case was ongoing. Id. at 12. These requests were summarily denied. Id. at 14. Additionally,

---

[3] Although plaintiff, in his response to Toliver's motion, states that he "responds here to both defendants," Dkt. # 58, at 8, he later filed a separate response to Davis's motion. See Dkt. # 65. Plaintiff's response to Davis's motion incorporated the evidence submitted in the response to Toliver's motion, without any new evidence. Id. at 1. The Court has considered both responses.

[4] The evidence submitted in support of Davis's motion is substantially the same as the evidence submitted in support of Toliver's motion. Compare Dkt. ## 53-1 to 53-28, with Dkt. ## 54-1 to 54-35. Unless citation to evidence exclusive to Davis's motion is needed, citations will be to the evidence attached to Toliver's motion and plaintiff's response thereto.

2

plaintiff testified that, on numerous occasions, his clothing and bedding, as well as that of other prisoners, were not laundered according to the schedule set out by CCCJC policy. Id. at 19. Other prisoners would exchange their dirty items for cleaner items assigned to new inmates who had since been released, but plaintiff never did so. Id. at 21-22. Likewise, cleaning supplies and hygiene items were not provided regularly, as required by CCCJC policy. Id. at 23, 25.

At that point, plaintiff began to develop familiarity with the CCCJC's grievance procedure. The CCCJC has adopted a three-step grievance procedure for inmates to follow. Dkt. # 53-18. First, prisoners "are encouraged to resolve questions, disputes, and complaints through informal communication" via the request to staff form (RSF). Id. at 1. If the response to the RSF is not satisfactory, the prisoner can file a formal grievance with the designated facility grievance officer. Dkt. # 53-18, at 2. Gina Hutchinson, the chief of security, served as one of the designated facility grievance officers during the time in which plaintiff was in the CCCJC. Dkt. # 53-26, at 5. Any grievance must have attached to it the original RSF. Dkt. # 53-19. After receiving the response to the grievance, the prisoner may appeal to the director of detention services. Dkt. # 53-18, at 3. Plaintiff states that he filed multiple RSFs regarding his requests to use the law library, for laundered clothing and bedding, and for cleaning and hygiene supplies. Dkt. # 53-1, at 15, 26, 27.

On September 25, 2011, plaintiff caught the attention of a passing detention officer and asked for medical attention for a swollen arm. Dkt. # 53-6. Plaintiff received medical care on that date, but he returned four days later with a fever and swelling under his arm. Dkt. # 53-7. Plaintiff received further attention in the CCCJC's medical facility on October 1, October 2, and October 3, presenting with a "hard knot" under his arm and escalating symptoms, including fever, vomiting, and pain. Dkt. ## 53-8, 53-9, 53-10. Although the CCCJC medical staff prescribed treatment and

medication after each visit, on October 3, 2011 plaintiff was sent to a local hospital, where he underwent surgery. Dkt. # 53-11. A laboratory test at the hospital noted "many staphylococcus aureus (methicillin resistant)" [MRSA] organisms in plaintiff's wound culture, Dkt. # 58-28, at 2, but plaintiff's diagnosis was limited to cellulitis and an abcess. Dkt. # 53-12.

When plaintiff returned to the CCCJC, he was kept in a holding cell away from other prisoners for six days. Dkt. # 53-1, at 28. Plaintiff testified that, while there, he was denied the medications that had been prescribed by his physicians, as well as access to bathing facilities. Id. at 31-32. He believed that he filed at least one RSF about these issues, but he could not recall precisely if or when he did so. Id. at 33. Approximately one month after plaintiff's surgery, he began complaining of pain and blurred vision in one eye. Dkt. ## 53-13, 53-14. Although he was prescribed pain medication, he frequently refused it. See Dkt. # 53-15 (detailing five separate instances in which plaintiff refused medication in November 2011).

In December 2011, CCCJC officials began the process of requesting from the DOC an optometry appointment for plaintiff. Dkt. # 53-1, at 54. However, no appointment had been scheduled when plaintiff filed a grievance on January 24, 2012. Dkt. # 53-21. In that grievance, plaintiff briefly recited his medical history and his desire to see an optometrist. Id. at 1. He also noted that his "[b]lood pressure today was 176/114," and that he desperately needed medical care. Id. Although addressed to Hutchinson, she did not recall receiving it. Dkt. # 53-26, at 9. The grievance was not logged in the CCCJC's grievance logbook, Dkt. # 53-20, at 3, as was the standard

practice for any grievance received by CCCJC officers. Dkt. # 53-26, at 5. Plaintiff received no response to this grievance.[5] Dkt. # 53-25.

On January 25, 2012,[6] plaintiff filed a RSF that was addressed to "Medical." Dkt. # 53-22. In it, he noted that his eyesight was blurry, that his blood pressure was high, and that his blood sugar levels were problematic. Id. The response from "Medical," which came on the same day, informed plaintiff: "[Y]ou were seen last night by a nurse. Your b[lood] p[ressure] was increased a little but [was] not treatable [with] drugs. Your blood sugar was great. DOC knows about your eye problem and has you on there [sic] list." Id. Plaintiff received an eye exam on February 23, 2012. Dkt. # 53-23. The optometrist found plaintiff's ocular health "normal," although he recommended that plaintiff get new glasses to correct his eyesight. Id.

Plaintiff was transferred to the county jail in Rogers County, Oklahoma on February 28, 2012. Dkt. # 53-1, at 2. He returned to the CCCJC on April 2, 2012. Id. On April 16, 2012, plaintiff filed another RSF, this one directed to Hutchinson. Dkt. # 53-25. Plaintiff asked why he had not

---

[5] Defendants argue that, because Hutchinson stated that she could not recall receiving this grievance and there was no record of it in the grievance logbook, plaintiff never actually filed this grievance. Dkt. # 53, at 20. Yet, curiously, both plaintiff and defendants submitted the grievance as evidence. Dkt. ## 53-21, 54-21, 58-6. Regardless, the Court must, in resolving a motion for summary judgment, construe the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Therefore, the Court must assume, for purposes of this motion, that plaintiff did in fact submit the grievance.

[6] The date on the form not wholly legible; the second digit signifying the day of the month could be either a four or a five. See Dkt. # 53-22. Defendants state, and plaintiff does not dispute, that this RSF was submitted on January 25, 2012. Dkt. # 53, at 15; Dkt. # 54, at 15. This comports with the Court's reading of this RSF and the grievance submitted on January 24. On the grievance, plaintiff noted that his "[b]lood pressure today was 176/114." Dkt. # 53-21 (emphasis added). The official who answered the RSF noted that plaintiff was "seen last night" for his blood pressure complaints. Dkt. # 53-22. Taken together, these documents strongly suggest that defendant's interpretation of the date as January 25, 2012 is correct.

5

received a response to the grievance he submitted on January 24, and he renewed his request for treatment for his blurred vision. Id. Hutchinson responded on April 18, stating that she had not received a grievance from plaintiff and that he had already received the requested treatment. Id. Plaintiff was transferred from the CCCJC to a DOC facility on April 27, 2012. Dkt. # 53-1, at 2.

Plaintiff filed his original complaint on September 5, 2013. Dkt. # 1. At that time, plaintiff was in DOC custody. Dkt. # 47, at 1. Plaintiff later filed amended and second amended complaints against defendants. Dkt. ## 13, 16. In plaintiff's second amended complaint, he alleges claims under 42 U.S.C. § 1983, asserting violations of his Eighth Amendment rights. Dkt. # 16, at 1. Specifically, he asserts that defendants violated his rights by: denying him access to legal materials; failing to supply clean clothing and bedding; failing to provide cleaning and hygiene supplies; not maintaining sanitary conditions in the CCCJC; refusing to provide access to adequate bathing facilities; and failing to provide proper medical care, both in October 2011 and in January 2012. Id. at 2-3.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Both defendants argue that summary judgment as to all of plaintiff's claims should be granted because plaintiff failed to comply with the PLRA's exhaustion requirement. Dkt. # 53, at 11; Dkt. # 54, at 18. Additionally, both defendants argue that plaintiff cannot show a constitutional violation. Dkt. # 53, at 21; Dkt. # 54, at 21. Plaintiff responds that the PLRA is not applicable and that, regardless, he has exhausted his remedies. Dkt. # 58, at 15. He also contends that questions of fact remain as to whether his Eighth Amendment rights were violated, precluding summary judgment. Id. at 21.

7

A. Failure to Exhaust

Both defendants move for summary judgment based on plaintiff's failure to exhaust his administrative remedies. Dkt. # 53, at 11; Dkt. # 54, at 18. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Each of plaintiff's claims is an "action . . . with respect to prison conditions." See Porter v. Nussle, 534 U.S. 516, 532 (2002) (equating the phrase "prison conditions" with "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). At the time he filed his original complaint, plaintiff was a prisoner in DOC custody. Dkt. # 47, at 1. Thus, plaintiff must have exhausted his available administrative remedies, in compliance with § 1997(e)(a), prior to filing suit, or else his claims are barred. See Dkt. # 48, at 6-7.

The Supreme Court has said that the PLRA was passed because "[w]hat this country needs, Congress decided, is fewer and better prisoner suits." Jones v. Bock, 549 U.S. 199, 203 (2007). The PLRA's exhaustion requirement promotes this aim because it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Id. at 204. The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. See Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001)).

8

"[E]ven if a plaintiff is unaware of a prison's administrative grievance procedure, such unawareness does not waive the exhaustion requirement under the PLRA." Torres v. Corr. Corp. of Am., 372 F. Supp. 2d 1258, 1262 (N.D. Okla. 2005) (citing Gonzales-Liranza v. Naranjo, 76 F. App'x 270, 273 (10th Cir. 2003) (unpublished opinion)). There is no futility exception to § 1997e(a)'s exhaustion requirement. Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). However, a prisoner need only exhaust "available" administrative remedies: "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010).

Plaintiff sets out two arguments that, he asserts, should preclude application of the PLRA to his claims. First, plaintiff argues that the Supreme Court's decision in Bock requires such a result. Dkt. # 58, at 15. In Bock, the Supreme Court determined that, because the PLRA's exhaustion requirement is an affirmative defense, a prisoner is not required to demonstrate exhaustion in the complaint. Bock, 549 U.S. at 212. Moreover, where a prisoner has complied with the PLRA's exhaustion requirement as to some, but not all, of his claims, a court may dismiss only the non-compliant claims, not the prisoner's entire complaint. Id. at 220-21. These holdings are irrelevant to plaintiff's case. Defendants asserted the PLRA's exhaustion requirement as an affirmative defense in their answers, and they have not argued that plaintiff's claims should be dismissed for a pleading error. Dkt. # 19, at 3; Dkt. # 20, at 4. As will be discussed in greater detail below, the Court finds that all of plaintiff's claims are barred by the PLRA, making the Bock Court's second holding inapplicable here. Bock does not prevent application of the PLRA's exhaustion requirement.

9

Second, plaintiff contends that this Court should, as a matter of first impression, "rule that the PLRA does not apply to Oklahoma county jails and state prisons." Dkt. # 58, at 16. Plaintiff argues that the PLRA lacks language preempting state law and "[w]hen a law of a State is paramount, there is a 'presumption against preemption.'" Id. (quoting Hillman v. Maretta, 133 S. Ct. 1943, 1950 (2013)). Because the right of access to the courts is an interest that the state of Oklahoma finds paramount, so the argument continues, the PLRA does not apply to county and state correctional facilities within Oklahoma. Id. at 17. Plaintiff's argument is far-fetched and unconvincing. The PLRA, and specifically the exhaustion requirement of § 1997e(a), concerns prisoners' ability to access federal remedies via suits "under section 1983 . . . or any other Federal law." It would be ludicrous to find that Oklahoma's interest in prisoners receiving federal remedies is somehow "paramount" over the federal legislation designed to govern such cases. Moreover, §1997e states, multiple times, that its provisions apply to those "confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a) (emphasis added); see also id. §§ 1997e(c)(1), (d)(1), (e), (h). The statute is not limited to those in federal custody; it extends to "any" correctional facility, which includes Oklahoma county jails like the CCCJC. E.g. Aaron v. Whetsel, 147 F. App'x 5, at 5 (10th Cir. 2005)[7] (finding the PLRA barred the claims of a prisoner incarcerated in the jail of Oklahoma County, Oklahoma). The Court finds plaintiff's arguments unavailing and will analyze whether the PLRA bars his claims.

According to the Supreme Court, the administrative remedies that a prisoner must exhaust "are defined not by the PLRA, but by the prison grievance process itself." Bock, 549 U.S. at 218.

---

[7] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

As plaintiff was housed in the CCCJC at the time of his complaints, plaintiff must have exhausted the CCCJC's administrative procedures to satisfy § 1997e(a). The CCCJC's inmate grievance procedure has three stages: first, informal communication with staff through the RSF; next, the filing of a grievance with the facility grievance officer; and finally, an appeal to the director of detention services. Dkt. # 53-18, at 1-3. Additionally, the formal grievance must be accompanied by the original RSF. Dkt. # 53-19.

Most of plaintiff's claims are undoubtedly barred by plaintiff's failure to begin, much less complete, the CCCJC's grievance procedures. See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." (citing Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001))). Plaintiff has alleged the following claims: denial of access to legal materials; refusal to provide clean linens, bedding, and clothing; refusal to supply hygiene items; failure to maintain sanitary conditions; denial of medications following plaintiff's return from the hospital; denial of access to adequate bathing facilities; and the failure to provide medical care at several points during plaintiff's incarceration. See Dkt. # 16. Defendants state, and plaintiff does not openly contest, that plaintiff did not file a RSF, a grievance, or an appeal for any of his claims except the failure to provide medical care claim. See Dkt. # 53, at 14; Dkt. # 58, at 9-14. There is no evidence in the record of any RSF or grievance other than those related to plaintiff's failure to provide medical care claim. Plaintiff testified that he filed numerous RSFs on a variety of these issues. Dkt. # 53-1, at 15, 26, 27, 33. Assuming that plaintiff filed these RSFs, there is no evidence--even from plaintiff's deposition testimony--that he filed any related

11

grievance or appeal. Thus, plaintiff clearly failed to exhaust his administrative remedies as to these claims, and as such they are barred by the PLRA. 42 U.S.C. § 1997e(a).

That leaves plaintiff's claim of inadequate medical care, which defendant argues is also barred by §1997e(a) for failure to comply with the CCCJC's grievance procedures. Dkt. # 53, at 20-21. In Woodford v. Ngo, 548 U.S. 81, 93 (2006), the Supreme Court construed § 1997e(a) to require "proper exhaustion" of administrative remedies, as that term is used in administrative law: "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id.; see also Bock, 549 U.S. at 218 (noting that proper exhaustion requires prisoners to "'complete the administrative review process in accordance with the applicable procedural rules,'--rules that are defined not by the PLRA, but by the prison grievance process itself" (quoting Woodford, 548 U.S. at 88)). The Court then reversed and remanded the circuit court's determination that a prisoner had exhausted his administrative remedies, despite filing his grievance beyond the time allowed by the applicable grievance process. Woodford, 548 U.S. at 86-87.

There can be little argument that the RSFs and grievance that plaintiff submitted as part of his inadequate medical care claim did not comply with all of the applicable procedural rules of the grievance process. Plaintiff submitted three documents to CCCJC personnel related to his claim for inadequate medical care: on January 24, 2012, plaintiff submitted a grievance to Hutchinson, seeking treatment for his vision and blood pressure, Dkt. # 53-21; on January 25, 2012, plaintiff submitted a RSF, addressed to "Medical," seeking an eye exam and care for his rising blood pressure and blood sugar, Dkt. # 53-22; and on April 16, 2012, plaintiff submitted a RSF to Hutchinson,

12

seeking treatment for his vision and asking why he had not received a response to his January 24 grievance. Dkt. # 53-25. Plaintiff received responses to his January 25 and April 16 RSFs, and he did not afterwards file a grievance, the next step in the CCCJC's grievance process. See Dkt. # 53-22; Dkt. # 53-25; see also Dkt. # 53-19. He likewise filed no appeal. Thus, the RSFs cannot be the basis for an argument that plaintiff exhausted his administrative remedies. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." (citing Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001))). The grievance form explicitly requires that a grievance be accompanied by the answered RSF that the prisoner had previously submitted.[8] Dkt. # 53-19. Plaintiff submitted his January 24, 2012 grievance prior to the submission of any of the RSFs in the summary judgment record, much less the receipt of an answer. See Dkt. ## 53-21, 53-22, 53-25. Thus, plaintiff failed to "complete the administrative review process in accordance with the applicable procedural rules." Bock, 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88). Plaintiff's failure to provide medical care claim is barred by the PLRA because plaintiff did not fully comply with the CCCJC's grievance procedures.

Even if plaintiff had complied with the CCCJC's grievance procedures in filing his RSFs and grievance, his claim would not succeed because he never filed an appeal, the final step in the grievance process. Although plaintiff's response is unclear on this point, plaintiff argues that the failure to respond to the grievance he submitted on January 24 creates a question of material fact sufficient to preclude summary judgment. Dkt. # 58, at 15. The Court interprets plaintiff's argument

---

[8]     In his deposition, plaintiff admitted to knowing that a RSF had to be attached to a grievance. Dkt. # 53-1, at 97.

13

to be that the failure to respond to the grievance rendered further administrative remedies unavailable, and as such plaintiff did not need to exhaust prior to filing suit. See Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."). The prisoner bears the burden of proving that a particular administrative remedy was unavailable. Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011). The Tenth Circuit has stated that "when prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA." Whitington v. Ortiz, 472 F.3d 804, 807-08 (10th Cir. 2007) (citing Jernigan, 304 F.3d at 1032 ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable . . . .")). However, Whitington and Jernigan have been interpreted by several district courts to apply only when officials fail to respond to a grievance at the final stage of the grievance process, as those were the factual circumstances in each case. See Adams v. Fochee, Civil Action No. 12-cv-01076-PAB-CBS, 2013 WL 3093479, at *2 (D. Colo. June 18, 2013); Rouse v. Baca, No. CV 11-0433 MV/CG, 2012 WL 4498866, at *4-5 (D.N.M. Sept. 25, 2012). To those district courts, the failure to respond to a grievance at an intermediate level of the grievance process does not render further administrative remedies unavailable. Id. This interpretation is in line with several recent unpublished decisions from the Tenth Circuit. See Gomez v. Lopez, 581 F. App'x 724, 725 (10th Cir. 2014) ("[Plaintiff] should have attempted to file a formal grievance after it was apparent that he would not receive a response to his informal complaint, and [he] admits that he did not do so. [Plaintiff] did not meet his burden of showing that the remedy he failed to seek--a formal grievance--was unavailable to him.");

14

Hemphill v. Jones, 343 F. App'x 329, 331-32 (10th Cir. 2009). The Court finds the reasoning of these district courts to be persuasive. Plaintiff has made no attempt to show that he could not file an appeal after he received no response to his grievance. Thus, the failure to respond to the grievance did not render further administrative remedies unavailable. All of plaintiff's claims are barred by his failure to exhaust the available administrative remedies, as required by the PLRA.

### B. Constitutional Violation

Even if the Court were to assume that the CCCJC's failure to respond to the grievance rendered administrative remedies unavailable and excused the need to exhaust, plaintiff's failure to provide medical care claim still would not succeed because plaintiff cannot show a violation of his constitutional rights. Plaintiff brought his claims under 42 U.S.C. § 1983, which provides that "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) "that the alleged violation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). Thus, the non-existence of a constitutional violation would be fatal to plaintiff's failure to provide medical care claim.

"Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to [the] serious medical needs of prisoners in their custody." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104-06 (1976)). "'Deliberate indifference' involves both an objective and a subjective component." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). To satisfy the objective

15

component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A medical need is objectively serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt, 199 F.3d at 1224 (citing Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). "The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" Sealock, 218 F.3d at 1209 (quoting Farmer, 511 U.S. at 837).

Plaintiff cannot show that either defendant violated plaintiff's Eighth Amendment rights as to the health concerns--high blood pressure and blurred vision--that were the basis for the grievance.[9] The subjective prong of the deliberate indifference analysis requires the prison official "knows of and disregards an excessive risk to inmate health or safety." Id. (emphasis added). In the grievance, plaintiff requested medical care because his "[b]lood pressure was 176/114." Dkt. # 53-21. The response to the January 25 RSF informed plaintiff that "[he was] seen last night by a nurse. [His] b[lood] p[ressure] was increased a little but [was] not treatable [with] drugs." Dkt. # 53-22. This shows that CCCJC medical staff--to say nothing of defendants--did not "disregard" any excessive risk to plaintiff's health caused by his blood pressure; rather, they were monitoring it, but they chose to provide no medications at that time. See Sealock, 218 F.3d at 1209. The fact that plaintiff may have disagreed with that particular course of treatment is not enough to establish deliberate indifference. Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state

---

[9] As the Court has assumed, for purposes of this constitutional analysis, that plaintiff exhausted his administrative remedies solely with respect to the grievance, the Court addresses only those complaints made in the grievance.

a constitutional violation."). Thus, there was no Eighth Amendment violation related to the treatment of plaintiff's blood pressure.

Plaintiff's desire for an eye exam likewise had not been disregarded; it had simply been delayed. "[A] delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.'" Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Id. As discussed in plaintiff's deposition, CCCJC officials began requesting an optometry appointment for plaintiff in December 2011. Dkt. # 53-1, at 54-55. When plaintiff actually received care from an optometrist in February 2012, the optometrist determined that plaintiff needed new glasses to correct his vision but that his ocular health was otherwise normal. Dkt. # 53-23. There is no evidence to show any substantial harm resulting from the delay between when plaintiff requested care and when it occurred. Thus, plaintiff cannot show an Eighth Amendment violation related to his eyesight.

Even if the Court were to conclude that plaintiff had exhausted his administrative remedies as to his claim for failure to provide medical treatment, summary judgment would be appropriate because plaintiff cannot show an Eighth Amendment violation in connection with that claim. Summary judgment as to all claims is granted in favor of defendants and against plaintiff.

**IT IS THEREFORE ORDERED** that the motions for summary judgment of defendants Steve Toliver (Dkt. # 53) and Sheriff John Davis (Dkt. # 54) are hereby **granted**.

**IT IS FURTHER ORDERED** that defendants' combined motion in limine (Dkt. # 59) and plaintiff's motion in limine (Dkt. # 60) are **moot**. A separate judgment is entered herewith.

**DATED** this 12th day of March, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE